# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

US TECHNOLOGY CORP.,

        Plaintiff,

v.

STEPHEN L. JOHNSON,
   et al.,

        Defendants

Case no. 2:08-CV-82
Judge Edmund A. Sargus, Jr.
Magistrate Judge Norah McCann King

## OPINION AND ORDER

This matter is before the Court for consideration of the Defendants' Motions to Dismiss. (Docs. 12, 14.) For the reasons stated below, the Motions are granted.

### I.

Plaintiff, US Technology Corporation ("UST"), filed this action against Stephen L. Johnson, Administrator of the United States Environmental Protection Agency ("USEPA") and Chris Korleski, Director of the Ohio Environmental Protection Agency ("OEPA"), both in their official capacities, seeking a declaratory judgment and injunctive relief regarding the interpretation of Ohio Administrative Code ("O.A.C.") § 3745-266-20 and 40 C.F.R. § 266.20 as applied to UST's "SEALTECH block."

UST manufactures SEALTECH block by recycling spent blast media ("SBM"), which includes residue-plastic particles and paint chips. (Compl. ¶ 2.) The process begins when a user, such as the United States Department of Defense, applies plastic blast media ("PBM") against a metal to remove paint. (Compl. ¶ 1–3.) Because the byproduct contains heavy metals from the old paint, including lead, chromium, and cadmium, SBM is initially

categorized as hazardous waste. (Compl. ¶ 2.) Making good use of an otherwise hazardous product, UST procures waste SBM and utilizes it in a patented process to manufacture its SEALTECH masonry block. (Compl. ¶ 6.)

When SEALTECH blocks are used in an approved manner, the recycled SBM ingredient is no longer considered hazardous waste. (Compl. ¶¶ 5-6.). *See* O.A.C. § 3754-51-02(E)(1) (stating that materials are not waste when recycled as specified). OEPA has determined, however, that this recycling exception ceases when SEALTECH blocks, including their SBM contents, are "applied to or placed on the land." O.A.C. § 3745-266-20(A). At that point, OEPA no longer considers SEALTECH blocks benign recycled waste but classifies them as being "used in a manner that constitutes disposal." Characterizing SEALTECH blocks that are applied or placed on the land as "disposal" subjects UST to the more onerous requirements of O.A.C. §§ 3745-266-20 – 23.[1] Use of materials in a manner constituting disposal requires, among other things, the acquisition of hazardous waste permits for the storage of the materials.

---

[1] O.A.C. § 3745-266-22; O.R.C. § 3734.02. In relevant part, O.A.C. § 3745-266-20 provides:

(A) Rules 3745-266-20 to 3745-266-23 of the Administrative Code apply to recyclable materials that are applied to or placed on the land:

(1) Without mixing with any other substance(s); or
(2) After mixing or combination with any other substance(s).
(3) The materials in paragraphs (A)(1) and (A)(2) of this rule will be referred to throughout rules 3745-266-20 to 3745-266-23 of the Administrative Code as "materials used in a manner that constitutes disposal."

*See also* O.A.C. § 3754-51-02(c) ("Materials are wastes if they are recycled . . . in a manner constituting disposal . . . [when] applied to or placed on the land or are otherwise contained in products that are applied to or placed on the land[.]"); O.A.C. § 3754-51-02(E)(2) ("[M]aterials are wastes, even if [recycled] . . . (a) . . .[when] used in a manner constituting disposal, or used to produce products that are applied to the land[.]").

-2-

In June 2004, the Director of OEPA issued a set of Findings and Orders formally approving UST's recycled use of SBM in the manufacture of split-faced masonry block (*i.e.*, SEALTECH block), if managed "in accordance with OAC rules 3754-51-01 and 51-02."[2] (Doc. 14-3 ¶ 3.) In part, the OEPA Findings and Orders required UST to submit monthly reports regarding the manufacture and sale of SEALTECH block. (Doc. 14-3 "ORDERS" ¶ 1.) As follow-up to one or more of these reports, inspectors from OEPA visited various construction sites utilizing SEALTECH blocks and found that the product had been used below grade. (Doc. 14-4 3.) Through a series of letters (not formal Findings or Orders), OEPA informed UST that SEALTECH blocks used below grade, such as in building foundations, are waste materials "used in a manner constituting disposal." (*See* Doc. 14-4 4.) OEPA suggested an abatement strategy in response to UST's alleged violations, where UST would implement various management controls to "insure [sic] that the Sealtech block is not used in the below grade applications."[3] (Compl. ¶¶ 24–25.) This strategy called for improvements in packing labels, direct sales, distributor training, and product literature to avoid future below grade use. (Doc. 14-4 3–4.) Regardless of the proposals suggested, OEPA maintained a stance that SEALTECH blocks could not be used below grade or they would be considered

---

[2] In its June 17, 2004 letter, OEPA cited O.A.C. § 3745-51-01 and 51-02, not O.A.C. § 3745-266-20. (Doc. 14-3 ¶¶ 3, 18.) To clarify, O.A.C. § 3745-266-20, the portion of the Administrative Code cited most frequently by UST, begins and outlines the section of regulations applicable to "materials used in a manner that constitutes disposal." Various other code portions, including O.A.C. § 3745-51-01 and 51-02, define recycled waste materials and indicate when they are considered used "in a manner constituting disposal," making them subject to the more demanding requirements of O.A.C. § 3745-266-20 to 266-23.

[3] The facts as presented in the Complaint and memoranda are not entirely clear on this issue. Presumably, instead of imposing fines or implementing the more stringent restrictions of O.A.C. § 3745-266-20 to 266-23, OEPA proposed an abatement strategy outlined in several letters. These facts, however, are tangential and not necessarily relevant for purposes of the Opinion here.

-3-

waste "used in a manner that constitutes disposal."

OEPA's determination based on O.A.C. § 3745-266-20 and other portions of the Ohio Administrative Code restricts the use of SEALTECH block to above-grade application and prohibits its use in basements or foundations. UST challenged OEPA's suggested management controls and claimed that "a proper forum did not exist for UST to demonstrate that it had not violated Ohio Revised Code sections" in an initial appeal to Ohio's Environmental Review Appeals Commission ("ERAC"). (Compl. ¶ 26.) ERAC dismissed the appeal, stating that the proposed management controls, as set forth in the series of letters, were not a "final action" of the OEPA Director and that UST was free to disregard the suggested means of compliance. (Compl. ¶ 27.) A subsequent opinion of Ohio's Tenth Appellate District Court of Appeals affirmed ERAC's judgment. (Doc. 14-6 ¶ 17.)

UST now alleges that OEPA's prohibition against below-grade application of SEALTECH block misapplies Ohio regulations and follows from an "an [improper] interpretation of federal regulations" (Compl. ¶¶ 38, 61-62). According to UST, the Ohio administrative regulations originate from the same source: the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6901 *et seq*. RCRA authorizes the USEPA Administrator to coordinate with the states for implementation of their own hazardous waste programs. 42 U.S.C. § 6926(b). Thus, USEPA formulated federal regulations pursuant to RCRA, and OEPA formulated similar regulations for the State of Ohio. As such, the "use constituting disposal" and "applied to or placed on land" language in the Ohio Administrative

-4-

Code closely mirrors the language found in the Code of Federal Regulations.[4] As for this litigation, however, only OEPA, and not USEPA, has initiated RCRA enforcement actions against UST.

UST attributes only a few actions (or non-actions) to USEPA for which it seeks a remedy. These include: (1) USEPA's authorization of Ohio's RCRA plan, a plan used for enforcement by OEPA against UST (Compl. ¶ 44.), and (2) USEPA's failure to reach a determination on whether SEALTECH block utilized below grade is "applied to the land" in a manner constituting hazardous waste disposal.[5]

UST's allegations against OEPA are more robust. Primarily, it argues that OEPA has improperly found that below-grade applications of SEALTECH block constitutes disposal of hazardous waste under O.A.C. § 3745-266-20 and 40 C.F.R. § 266.20. UST's discussion of OEPA actions throughout the Complaint can be summarized as follows: (1) OEPA claims that its Ohio Administrative Code standard is equivalent to that set forth in the Code of Federal Regulations, not more stringent; (2) OEPA has admitted that it interprets the regulatory concept of "use constituting disposal" differently than other states; (3) OEPA has intentionally

---

[4] 40 C.F.R. § 266.20 states, in relevant part:

(a) The regulations of this subpart apply to recyclable materials that are applied to or placed on the land:
   (1) Without mixing with any other substance(s); or
   (2) After mixing or combination with any other substance(s). These materials will be referred to throughout this subpart as "materials used in a manner that constitutes disposal."

[5] *See also* Pl.'s Mem. Opp. USEPA's Mot. to Dismiss 5 ("Either USEPA has precluded UST from utilizing its product below grade [presumably by OEPA application of 40 C.F.R. § 266.20 or the analogous O.A.C. § 3745-266-20 ] or USEPA has failed to act to establish that its standard does not preclude the use of the product.")

-5-

restricted and harmed UST's business in Ohio through its regulatory enforcement; (4) OEPA's determination regarding SEALTECH block is inconsistent with the regulation of other manufacturers, putting it at a competitive disadvantage; (5) OEPA's regulatory findings against SEALTECH block have less to do with safety and more to do with an erroneous interpretation of federal regulations; (6) OEPA incorrectly finds SEALTECH block used below grade to be in contact with the land, when certain procedures prevent actual contact with earth; and (7) "OEPA has determined to hide behind the cloak of the USEPA as it cites that it is consistent with the USEPA in its determination" (Compl. ¶ 63).

All of these allegations return to the same request for relief: "[a] declaratory judgment on whether below grade use of Sealtech block is 'applied to the land' within the meaning of 40 C.F.R. § 266.20 and O.A.C. [§] 3745-266-20. . ." (Compl. ¶ 58.) Thus, in this action, UST seeks a declaratory judgment that OEPA's interpretation of O.A.C. § 3745-266-20 and 40 C.F.R. § 266.20 is improper. Correspondingly, UST seeks an injunction against OEPA Director Korleski directing him to implement an interpretation that use of SEALTECH block below grade is not disposal and does not require application of the O.A.C. §§ 3745-266-20 through 23.

## II.

Defendants USEPA and OEPA contend that dismissal is appropriate under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction and under Fed. R. Civ. P. 12(b)(6) for "failure to state a claim upon which relief can be granted."

To overcome a 12(b)(1) motion to dismiss, the plaintiff bears the burden of establishing the Court's subject matter jurisdiction. *Nichols v. Muskingum Coll.*, 318 F.3d 674, 677 (6th

Cir. 2003); *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990). Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction fall into two categories: facial attacks and factual attacks. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). In a facial attack, the defendant challenges the pleading itself, claiming the plaintiff has not alleged facts sufficient to establish subject matter jurisdiction. *Muskingum Coll.*, 318 F.3d at 677. The Court must take all material allegations in the complaint as true, and construe them in the light most favorable to the nonmoving party. *Ritchie*, 15 F.3d at 598. A factual attack is a challenge to the "factual existence of subject matter jurisdiction." *Id.* In considering such a motion, "the court may consider evidence outside the pleadings to resolve factual disputes concerning jurisdiction, and both parties are free to supplement the record by affidavits." *Muskingum Coll.*, 318 F.3d at 677. Examination of such materials, however, does not convert the 12(b)(1) motion to a Rule 56 summary judgment motion. *Rogers v. Stratton Indus.*, 798 F.2d 913, 916 (6th Cir.1986)

Rule 12(b)(6) allows the Defendant to raise, by motion, the defense of "failure to state a claim upon which relief can be granted." In considering a motion under the rule, the Court is to construe the complaint in the light most favorable to the Plaintiff, accepting all well-pleaded factual allegations as true. *Kottmyer v. Maas*, 436 F.3d 684, 688 (6th Cir. 2006). Although a motion under Rule 12(b)(6) is reviewed with a liberal standard, a pleader must set forth more than bare assertions of legal conclusions. *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007)("*LULAC*") (citing *Bovee v. Coopers & Lybrand CPA*, 272 F.3d 356, 361 (6th Cir. 2001)). As the Supreme Court recently explained, the Plaintiff's factual allegations "must be enough to raise a right to relief above the

speculative level . . . on the assumption that all the allegations in the complaint are true . . . ." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, ___, 127 S.Ct. 1955, 1965 (2007) (internal citations omitted). "To state a valid claim, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain recovery under some viable legal theory." *LULAC*, 500 F.3d at 527 (citing *Twombly*, 127 S.Ct. at 1969).

Here, USEPA and OEPA move for dismissal under both Rule12(b)(1) and 12(b)(6). Where both rules are invoked, the 12(b)(1) motion should be considered first because the 12(b)(6) "challenge becomes moot if [the] court lacks subject matter jurisdiction." *Moir*, 895 F.2d at 269.

### III.

Both USEPA and OEPA assert that the Court lacks subject matter jurisdiction under various theories. At the outset, the Court finds that the Defendants' motions to dismiss present facial attacks on the subject matter jurisdiction of this Court.[6] As such, in ruling upon the

---

[6] The Court notes that Defendant OEPA submitted several documents in support of its Motion. These include the following: (1) OEPA's June 17, 2004 "Director's Final Findings and Orders" regarding UST (Doc. 14-3); (2) a September 11, 2006 Letter from OEPA to UST's counsel, Ms. Laura L. Mills (Doc. 14-4); (3) an April 11, 2007 Ruling and Final Order by the State of Ohio Environmental Review Appeals Commission, with UST as a party (Doc. 14-5); and (4) a November 15, 2007 opinion by Ohio's Tenth Appellate District Court of Appeals, with UST as a party (Doc. 14-6). Each of these documents is either a public record or referred to in Plaintiff's Complaint. As for matters of public record, the Court may take these documents into account on this Motion to Dismiss without converting it to one for summary judgment by considering matters outside the pleadings. *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001) ("'In determining whether to grant a 12(b)(6) motion, the court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account.'" (quoting *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir. 1997))); *see also* 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (2d ed. 1990). Similarly, documents may be considered part of the pleadings, "if they are referred to in the plaintiff's complaint and are central to the plaintiff's claim." *Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir. 1999).

-8-

Motions, the Court will consider the material allegations in UST's complaint as true, and will construe the facts in the light most favorable to Plaintiff-UST. Because the Court reaches the conclusion that dismissal is warranted for both USEPA and OEPA for lack of subject matter jurisdiction, it will not address Defendants' alternative bases for dismissal or stay.

## A.     USEPA's Motion to Dismiss[7]

In support of its jurisdictional argument, USEPA asserts that Article III of the United States Constitution precludes jurisdiction here for lack of a case or controversy between it and UST. UST counters that the Court has federal question jurisdiction under 28 U.S.C. § 1331. The Court agrees that, because UST does not establish the necessary elements for a case or controversy, UST lacks jurisdictional standing. Moreover, the Court concludes that the statutes UST cites are not sufficient to invoke the Court's federal question jurisdiction, if in fact the pleadings do not disclose an actual controversy.

### 1. Cases and Controversies Jurisdiction Under Article III

Article III, § 2 of the United States Constitution limits the jurisdiction of federal courts to "cases" and "controversies" between parties. In each federal case, therefore, the plaintiff must establish that an actual case or controversy exists to support jurisdiction. *Lujan, v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). In order to satisfy this Article III requirement here, Plaintiff-UST must show that it suffered an "injury in fact," which it can demonstrate by presenting an "invasion of a legally protected interest" that is both "concrete

---

[7]     Because UST filed its Complaint against the USEPA Administrator in his official capacity, the suit is considered as against the Agency. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.").

and particularized" and "actual and imminent." *Id.* Plaintiff must also demonstrate a causal connection between the injury and the conduct complained of, and that a favorable decision would likely redress or remedy the injury. *Id.*

In support of its position that a case or controversy exists between it and USEPA, UST contends that it suffered an injury in fact because USEPA took *action* against its by implementing the federal regulations contained in 40 C.F.R. § 266.20 under RCRA. (Compl. ¶¶ 44–47.) Although its theory is not clear, UST seeks to satisfy its case or controversy requirement between itself and USEPA by contending that OEPA utilizes USEPA's regulation to justify an improper application against it. Therefore, according to UST, USEPA itself is indirectly prohibiting SEALTECH block's use below grade. (Pl.'s Mem. Opp. USEPA's Mot. to Dismiss at 5). Alternatively, UST maintains that USEPA *inaction* has harmed it because the federal agency has failed to definitively find that 40 C.F.R. § 266.20 does not preclude the use of SEALTECH block below grade. (Compl. ¶ 64; Pl.'s Mem. Opp. USEPA's Mot. to Dismiss at 5.) Neither of these arguments related to USEPA's purported *action* or *inaction* survives scrutiny.

### a. Direct and Indirect Action by USEPA

UST cannot establish agency *action* by USEPA, direct or indirect, sufficient to meet the case and controversy requirement. UST does not allege direct action, such as an enforcement effort or similar activity by USEPA against UST. Although UST alleges that OEPA for its has misinterpreted Ohio and federal law, its Complaint is devoid of any factual content related to USEPA action. Indeed, UST states in its Complaint that "[t]his case presents an actual controversy *between UST and the OEPA.*" (Compl. ¶ 56 (emphasis added).) Notably, UST

-10-

does not allege a controversy with USEPA, and the remainder of the pleading likewise confirms that USEPA has engaged in no direct actions against UST sufficient to meet the case and controversy requirement.

UST contends that USEPA engaged in indirect action that caused injury through its promulgation of 40 C.F.R. § 266.20 under RCRA (similarly implemented by OEPA as O.A.C. § 3745-266-20). According to UST, OEPA justifies its enforcement actions in this case based on an interpretation of O.A.C. § 3745-266-20 and 40 C.F.R. § 266.20. The Court interprets UST's argument to mean that USEPA indirectly prohibits UST from using SEALTECH block below grade. More precisely, UST appears to contend that USEPA promulgates minimum standards for RCRA's implementation by the states, and therefore, the states are merely proxies of the federal government when implementing relevant state codes. An analysis of the administrative regimes reveals, however, that state and the federal governments enforce their RCRA regimes independently, thus undercutting UST's contention that the states are merely proxies for the USEPA.

USEPA promulgated 40 C.F.R. § 266.20 pursuant to RCRA, 42 U.S.C. § 6901 *et seq.*. RCRA provides a comprehensive framework for governing hazardous wastes to "minimize the present and future threat to human health and the environment," 42 U.S.C. § 6902(b). In pursuit of this goal, RCRA authorizes the USEPA Administrator to coordinate with the states for implementation of their own hazardous waste programs "in lieu of the Federal program." 42 U.S.C. § 6926(b). RCRA permits states to enforce requirements more stringent than those proposed by USEPA, but such regulations may not be less restrictive than those imposed by the federal government. 42 U.S.C. § 6929. Accordingly, USEPA

-11-

authorized the State of Ohio to administer its statewide-hazardous waste program on June 30, 1989, making OEPA Ohio's formal arbiter of RCRA enforcement. *United States v. WCI Steel, Inc.*, 72 F. Supp. 2d 810, 818 (N.D. Ohio 1999). As part of this authorization, USEPA specifically approved of O.A.C. § 3745-266-20 with its "use constituting disposal" and "applied to or placed on land" language similar to that in the Code of Federal Regulations.[8] *See* 40 C.F.R. § 272.1801 (2008) (incorporating Ohio regulations by reference).

The text of RCRA, however, does not support UST's position that state enforcement actions under RCRA, specifically O.A.C. § 3745-266-20, necessarily implicate USEPA or federal government action. The plain language of RCRA indicates that state implementation operates *"in lieu of* the Federal program." 42 U.S.C. § 6926(b) (emphasis added). Later construction of RCRA further confirms the plain meaning of the text. *U.S. Dep't of Energy v. Ohio*, 503 U.S. 607, 611 (1992) ("RCRA regulates the disposal of hazardous waste . . . with a permit program run by EPA but subject to displacement by an adequate state counterpart."); *City of Heath v. Ashland Oil, Inc.*, 834 F. Supp. 971, 979 (S.D. Ohio 1993) ("Ohio's hazardous waste management program was authorized to operate in lieu of the federal program.").

While the language of O.A.C. § 3745-266-20 and 40 C.F.R. § 266.20 are similar in text, they are not equivalent in operation. OEPA promulgates and enforces RCRA provisions in the Ohio Administrative Code under its grant of authority from the Ohio General Assembly,

---

[8] USEPA originally approved of O.A.C. § 3745-58-30 in 40 C.F.R. § 272.1801(a)(1). O.A.C. § 3745-58-30 was later renumbered as O.A.C. § 3745-266-20, the regulation for which UST now seeks the Court's interpretation. *See* O.A.C. § 3745-266-20 ("HISTORY: Replaces former rule 3745-58-30.").

and USEPA promulgates and enforces similar federal regulations as empowered by Congress. USEPA initially approved of Ohio's RCRA enforcement program in June 1989, *WCI Steel, Inc.*, 72 F. Supp. 2d at 818. OEPA, however, does not enforce federal law; nor does USEPA enforce state law. USEPA simply ensures that the OEPA program continues to meet minimum standards, enforceable through various monitoring tools. 42 U.S.C. § 6926. USEPA retains the authority to enforce the federal regulations despite the existence of similar state regulations, but it must first provide advance notice of such actions to the authorized state. 42 U.S.C. § 6928(a)(2). Relating to UST's SEALTECH block, USEPA has provided no such notice to the State of Ohio nor has it pursued any enforcement actions against UST without such notice.

In *City of Heath v. Ashland Oil, Inc.*, this Court found that "a citizen suit is not available in an authorized state for an alleged violation of a federal provision superseded by state law pursuant to 42 U.S.C. § 6926(b)." 834 F. Supp. 971, 979 (S.D. Ohio 1993). Where the state has superseded the federal law with its own law under RCRA authorization, actions alleging violations of these state laws "should be brought in state court under state law." *See id.* at 978 (citing *Thompson v. Thomas*, 680 F. Supp. 1, 3 (D.D.C. 1987)); *see also Dist. of Columbia v. Schramm*, 631 F.2d 854, 861 (D.C. Cir. 1980) (finding an EPA decision not to veto a state's issuance of a permit under the Clean Water Act was not actionable because "[g]ranting federal court review of the [EPA]'s actions . . . would upset the federal-state balance struck by Congress: it would allow parties to create a basis for federal jurisdiction when federal involvement is merely secondary"). As determined in *City of Heath*, and based on the plain language of RCRA, USEPA's authorization of Ohio's state-administered RCRA program does not implicate federal action merely because the state enforces its similar state

-13-

regulations. OEPA's actions against UST, therefore, are not equivalent to USEPA action.

### b. Inaction by USEPA

UST contends that USEPA's inaction, in particular its failure to define whether SEALTECH block is appropriate for use below grade, creates a cognizable case and controversy in this Court. This contention is similarly unavailing.

UST cites no authority for the proposition that a federal administrative agency's failure to promulgate a particular regulation somehow generates federal jurisdiction. UST's Complaint makes passing reference the Administrative Procedures Act ("APA"), which authorizes reviewing courts to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). Under the Supreme Court's narrow construction of § 706(1) of the APA, however, a claim "can proceed only where a plaintiff asserts that an agency failed to take a discrete agency action that it is *required to take." Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 64 (2004) (emphasis added). Here, UST provides no source identifying USEPA's obligation to take action; UST merely asserts, without more, that "USEPA has failed to act to establish its standard does not preclude the use of the product." (Pl.'s Mem. Opp. USEPA's Mot. to Dismiss at 5.) The APA does not assist UST in its attempt to establish standing.

Similarly, RCRA provides no bases from which UST may derive standing to sue. The relevant RCRA citizen-suit language permits commencement of civil action " against the [USEPA] Administrator where there is alleged a failure of the Administrator to perform any act or duty under this chapter which is *not discretionary* with the Administrator." 42 U.S.C. §

6972(a)(2) (emphasis added).[9] Again, UST fails to identify a non-discretionary requirement under RCRA that compels USEPA to define the "applied to the land" language of 40 C.F.R. § 266.20 as pertaining to the use of SEALTECH block below grade. Further, and as discussed above, OEPA is authorized to control Ohio's RCRA program, including O.A.C. § 3745-266-20; USEPA is under no obligation to make a determination regarding 40 C.F.R. § 266.20 and SEALTECH block. *See* 42 U.S.C. § 6926(b) (describing USEPA authorized state law as operating "in lieu of" federal law). Even if OEPA's interpretation of O.A.C. § 3745-266-20 or, as UST sometimes contends, 40 C.F.R. § 266.20, is more restrictive than USEPA's interpretation of its regulation, RCRA expressly permits states to adopt more rigid enforcement regimes. 42 U.S.C. § 6929.[10] The Court concludes that UST has not established the USEPA's alleged inaction caused an injury in fact sufficient to assert that an actual case or controversy exists here to support standing.

## 2. Arising Under Jurisdiction

UST asserts that the Court has subject matter jurisdiction under 28 U.S.C. § 1331.

---

[9] RCRA contains two other vehicles for citizen-suits in 42 U.S.C. § 6972, neither of which is applicable here. The first, under subsection (a)(1)(A) permits suits, within the constraints of the Eleventh Amendment of the Constitution, against the United States and others for alleged violations of "any permit, standard, regulation, condition, requirement, prohibition, or order which has become effective pursuant to this chapter." The second, at subsection (a)(1)(A), permits suits against the United States and other parties for contributing "to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment." Both of these vehicles require advance notice to the USEPA Administrator prior to the commencement of a civil action. 42 U.S.C. § 6972(c). Plaintiff does not contend, and the record does not support a finding that such advance notice was provided here.

[10] Even if UST had demonstrated that USEPA failed to perform a non-discretionary action, it failed to comply with the RCRA requirement to provide notice to USEPA before a civil suit. 42 U.S.C. § 6972(c) (requiring no action to be pursued "prior to sixty days after the plaintiff has given notice to the [USEPA] Administrator that he will commence such action").

("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). UST has done no more than reference this statute in its attempt to invoke this Court's limited federal question jurisdiction. The Supreme Court has read "the phrase 'arising under' federal law," as found in 28 U.S.C. § 1331, "to exclude cases in which the plaintiff relies on state law, even when the state's exercise of power in the particular circumstances is expressly permitted by federal law." *U.S. Dep't. of Energy v. Ohio*, 503 U.S. 607, 625-26 (1992). *See also* U.S. Const. art. III, § 2 (limiting judicial power to cases "arising under . . . the Laws of the United States"). As set forth above, the state and federal RCRA regulations, while complementary, operate independently. UST's mere mention of 40 C.F.R. § 266.20 as a source of its grievances does not require the conclusion that its claim necessarily arises under federal law.

Here, despite several references to federal regulations, UST's claims, at bottom, rely on state law, not federal law. Under the facts, only OEPA has utilized its RCRA-based regulations against UST. Without a factual predicate, UST's incantation of 28 U.S.C. § 1331 alone does not create a basis for "arising under" jurisdiction.

Similarly, UST's mere reference to the Tucker Act, 28 U.S.C. § 1346, is unavailing. The statute provides that "district courts shall have original jurisdiction" over "civil action[s] or claim[s] against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department. 28 U.S.C. § 1346(a). Here, UST fails to meet the requirement that the "claim must be one for money damages against the United States." *United States. v. Mitchell*, 463 U.S. 206, 216 (1983) (internal citations omitted); *A.E. Finley & Assocs., Inc. v. United States*, 898 F.2d

1165, 1167 (6th Cir. 1990). UST does not seek monetary damages, but instead solely requests injunctive relief.

Finally, UST's invocation of the Declaratory Judgment Act does not meet the requirements for arising under jurisdiction. The Declaratory Judgment Act only applies to cases of "actual controversy." 28 U.S.C. § 2201(a). This Act "does not provide an independent basis for jurisdiction," but only provides opportunity for remedy "where federal jurisdiction already exists." *One Beacon Ins. Co. v. Chiusolo*, No. 07-5855, 2008 WL 4463786, at *3 (6th Cir. Oct. 2, 2008) (citing *Heydon v. MediaOne of Se. Mich., Inc.*, 327 F.3d 466, 470 (6th Cir. 2003)). For the many reasons discussed above, an actual case or controversy with USEPA does not exist here. Thus, the Declaratory Judgment Act does not apply and cannot support an independent ground for federal jurisdiction.

UST's references to these various federal statutes is insufficient to establish federal question jurisdiction as none arises under federal law. UST has failed to demonstrate subject matter jurisdiction as against USEPA under any theory. USEPA's Motion to Dismiss is, accordingly, **GRANTED**.

### B. OEPA's Motion to Dismiss

OEPA presents several theories in its attempt to demonstrate that the Court lacks jurisdiction. OEPA contends, among other arguments, that the state agency and its Director are immune under the Eleventh Amendment and the *Ex parte Young* doctrine, 209 U.S. 123 (1908). Additionally, OEPA submits that its actions against UST are not final; that the Court should decline jurisdiction under the abstention doctrine; and that other equitable considerations merit granting of its motion. The Court agrees that it does not have jurisdiction

over the claims raised by UST against OEPA because these claims arise under state not federal law. Consequently, the Court need not address the other legal theories presented by OEPA.

As with the analysis regarding subject matter jurisdiction over UST's claims against USEPA, the Court, in all cases, requires federal question or arising under jurisdiction for claims against OEPA.[11] 28 U.S.C. § 1331; *see also Palkow v. CSX Transp., Inc.*, 431 F.3d 543, 554 (6th Cir. 2005) ("Any notion that the jurisdictional net should be broadly cast by the courts is at odds with the constitutional establishment of a federal government of limited powers."). Claims invoking federal question jurisdiction under 28 U.S.C. § 1331 "may be dismissed for want of subject-matter jurisdiction if it is not colorable, i.e., if it is 'immaterial and made solely for the purpose of obtaining jurisdiction' or is 'wholly insubstantial and frivolous.'" *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 n.10 (2006) (quoting *Bell v. Hood*, 327 U.S. 678, 682-83 (1946)). Even if the parties do not raise the issue, courts "have an independent obligation to determine whether subject-matter jurisdiction exists." *Arbaugh*, 546 U.S. at 514.

UST's reliance on 28 U.S.C. § 1331 is insufficient here because no colorable claim of federal law remains. First, as discussed above, OEPA's authorized RCRA enforcement does not involve a federal question because its program operates in lieu of federal law.[12] While

---

[11] Other sources of jurisdiction, such as diversity of citizenship, amount in controversy or other specific grants of federal question jurisdiction are not applicable to the facts presented here.

[12] *See U.S. Dep't. of Energy*, 503 U.S. at 625–26 (excluding cases under 28 U.S.C. § 1331 where the "plaintiff relies on state law, even when the state's exercise of power in the particular circumstances is expressly permitted by federal law"); *City of Heath*, 834 F. Supp. at 979 (finding that a "citizen suit is not available in an authorized state for an alleged violation of a federal provision superseded by state law" and stating that "there is a clear position among several courts that [a] RCRA citizen suit is not available to enforce a state authorized program"); *Chemical Weapons Working Group, Inc. v. U.S. Dep't of the Army*, 990 F. Supp. 1316, 1319 (D. Utah 1997) (holding that once

-18-

UST may claim that OEPA hides "behind a cloak" of federal law or incorrectly interprets federal regulations, OEPA merely has the authority to interpret and implement the laws of the State of Ohio.

Therefore, UST can only hold OEPA accountable for application of O.A.C. § 3745-266-20 or other sections of the Ohio Revised or Administrative Code, not its alleged application of 40 C.F.R. § 266.20 or other sections of the United States Code or Code of Federal Regulations. By themselves, questions regarding these state regulations are merely issues of state law. *See Dague*, 732 F. Supp. at 465 (noting that challenges to a RCRA action in an authorized state may be brought under state not federal law); *Schramm*, 631 F.2d at 863 (finding under the Clean Water Act that "state courts are the proper forums for resolving questions about [the issuance of state] permits, which are, after all, questions of state law"). These questions must be resolved in state courts. *See, e.g., Barton v. Summers*, 293 F.3d 944, 948 (6th Cir. 2002)(noting that, without consent, states and state agencies are generally immune from private suit in federal courts under the Eleventh Amendment.)[13]

UST also mentions several other federal statutes in an attempt to invoke 28 U.S.C. § 1331 arising under jurisdiction, but none of these apply to OEPA or the State of Ohio. The

---

USEPA authorized the State of Utah to administer RCRA, "the federal statute was no longer applicable," permitting suit only under state law); *Dague v. City of Burlington*, 732 F. Supp. 458, 465 (D. Vt. 1989) ("[A] plaintiff seeking to challenge the operation of a hazardous waste site in an EPA authorized state may bring an action under state law, not federal law.").

[13] An exception to this rule is one not at issue here. Under the doctrine of *Ex Parte Young*, 209 U.S. 123 (1908), the Eleventh Amendment does not bar a federal court from issuing an injunction ordering prospective relief against a state official in order to prevent future constitutional violations. *Id.* at 159-60. Although Plaintiff seeks injunctive relief against a state official, UST does not plead, nor do the facts support, that OEPA is engaging in unconstitutional conduct which this Court could prevent from continuing.

APA, in particular, does not apply to states and therefore cannot provide a source of federal question jurisdiction against OEPA. *Sw. Williamson County Cmty. Ass'n, Inc. v. Slater*, 173 F.3d 1033, 1035 (6th Cir. 1999) ("By its own terms, the APA does not apply to state agencies."). Similarly, other federal statutes referenced by UST, including 28 U.S.C. § 1346 (the "United States as a Defendant") and 28 U.S.C. § 2412 ("Costs and fees"), only apply against the United States as a defendant. Finally, UST cites 28 U.S.C. § 2201 ("Creation of a remedy") and 28 U.S.C. § 2202 ("Further relief") which require actual controversy within the court's jurisdiction. Because this Court lacks jurisdiction initially, these statutes cannot, post hoc, provide a basis for federal question jurisdiction. *Stanley v. Avery*, 387 F.2d 637, 638 (6th Cir. 1968) ("The Declaratory Judgment Act enlarged the range of remedies in the federal courts but did not alter or extend their jurisdiction.") (citing *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671(1950)).

## IV.

For the foregoing reasons, Defendants' Motions to Dismiss (Docs. 12, 14) are **GRANTED**. This action is **DISMISSED**.

**IT IS SO ORDERED.**

EDMUND A. SARGUS, JR.
UNITED STATES DISTRICT JUDGE

DATED: 1-13-2009